***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The employer Diyahs Homes, Inc. was insured at the time of the accident with Travelers Insurance Company as the carrier on the risk.
4. On October 19, 2006, plaintiff was employed by defendant-employer as a residential home manager.
5. On October 19, 2006, plaintiff fell in the course and scope of her employment and alleged injuries to both her knees.
6. Defendants filed a Form 60 dated March 22, 2008, admitting plaintiff's right to compensation for her October 19, 2006 injury to her right knee.
7. On September 9, 2008, Dr. Douglas Martini, who saw plaintiff for a second opinion, assigned an eighteen percent permanent partial disability rating (18% PPD) to plaintiff's right knee.
8. On January 23, 2009, Dr. Barnes assigned a twenty percent permanent partial disability rating (20%PPD) to plaintiff's right knee.
9. Plaintiff has not been compensated for any disability rating to her right knee.
10. Plaintiff filed a Form 18M dated January 30, 2009, regarding future medical treatment for both knees. Defendants filed a Form 33 dated March 9, 2009, requesting a hearing to obtain a determination of recommended medical treatment in regards to the Form 18M.
11. On October 19, 2006, plaintiff's average weekly wage was approximately $360.00, yielding a compensation rate of $240.00, subject to verification by a Form 22 and wage records. *Page 3 
12. The Pre-Trial Agreement was received as Stipulated Exhibit 1. Post-hearing, the following exhibits were received by agreement of the parties: IC Forms as Stipulated Exhibit 2 and Medical Records as Stipulated Exhibit 3.
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Ledford's August 25, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Are plaintiff's current left knee symptoms and problems causally related to her October 19, 2006 injury by accident?
2. What future medical treatment should be approved for plaintiff's injury by accident, per the Form 18M?
3. Whether this matter was pursued and defended by defendants without reasonable grounds so as to impose attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the hearing date before the Deputy Commissioner, plaintiff was 45 years of age. She completed high school and has some college credits. Plaintiff was enrolled as a student at Fayetteville Community College and was serving as a foster parent.
2. Plaintiff worked for defendant-employer at a residential ("group") home for children with disabilities from July 2002 until November 2003, and then again from January 2005 to October 2006. Plaintiff was responsible for making sure the children's needs were met and had *Page 4 
much interaction with the residents. Plaintiff had become the manager just a couple of weeks prior to her accident.
3. On October 19, 2006, plaintiff was walking down the driveway of the group home with a child resident, whom she was taking to school, when she slipped and fell forward, landing on both knees on the pavement. She felt immediate pain in both knees and her left ankle. Although plaintiff intended to seek medical attention immediately afterward, and was on her way to do so, her supervisor requested that she return to the school to stay with the child client.
4. Defendants completed a Form 19 on October 24, 2006, and filed the same with the Commission on October 31, 2006. Per the Form 19, defendants had notice of plaintiff's fall as of the date of the accident, October 19, 2006, and such notice is not in dispute. The Form 19 is poorly completed, stating on line 13 as to injuries and body parts "All other specific injuries" and "Multiple body parts." Defendants began paying medical benefits and temporary total disability benefits, without filing any other forms with the Commission, in violation of statute and Commission Rules.
5. No form acknowledging compensability of plaintiff's accident was filed thereafter for approximately 17 months. The Form 60, specifically admitting the compensability of plaintiff's right knee, was filed with the Industrial Commission on March 27, 2008.
6. Plaintiff was seen at Cape Fear Valley Health System ER on or about August 22, 2006. She complained primarily of pain in her right knee, and underwent right knee x-rays with no evidence of fracture. The radiologist's impression was "patellar spurs." Pain medicine was prescribed, and plaintiff was returned to work August 26, 2006.
7. Plaintiff was seen by Dr. Deborah Morris at MedEx Urgent Care on or about October 29, 2006. Plaintiff reported her fall and that she felt pain and swelling in her right knee, *Page 5 
on which she had prior arthroscopic surgery. Plaintiff also reported that she had banged her left knee and twisted her left ankle, and had pain in both. Plaintiff was written out of work, and started on a course of conservative treatment.
8. An MRI of Plaintiff's right knee was done on October 30, 2006, at Carolina Imaging. The MRI indicated the following: (1) complete anterior cruciate ligament tear; (2) complex tear of posterior horn of the medial meniscus; (3) bone bruising of the medial and lateral tibial plateaus and minimally depressed fracture of the posterolateral tibial plateau margin; (4) strain/partial tear of the lateral collateral ligament. Plaintiff was then referred to Dr. Snead, an orthopedic surgeon with Fayetteville Orthopaedic and Sports Medicine.
9. Plaintiff was examined by Dr. Snead on November 8, 2006. She complained primarily of her right knee pain. After examining plaintiff and reviewing her MRI results, Dr. Snead assessed the following conditions which warranted surgery: a right anterior cruciate ligament (ACL) tear and right medial meniscal tear. He recommended anterior cruciate ligament reconstruction and medial meniscal repair. Dr. Snead placed plaintiff on light duty restrictions pending her surgery.
10. Plaintiff returned to MedEx Urgent Care on November 28, 2006, for follow-up of her right knee pain. She also reported pain in her left knee, which she was experiencing occasionally. She was told to remain out of work.
11. On January 8, 2007, Dr. Snead performed surgery on plaintiff's right knee: a diagnostic arthroscopy, with a partial medial meniscectomy and arthroscopic guided ACL reconstruction with hamstring autograft. Dr. Snead took plaintiff out of work, or placed her on restrictions that prevented her from working, until July 9, 2007. *Page 6 
12. On July 2, 2007, plaintiff was seen by Dr. Christopher Barnes at Fayetteville Orthopaedic and Sports Medicine, as Dr. Snead had left the practice. At that visit, plaintiff presented with left knee pain and told Dr. Barnes that she had also injured her left knee when she fell at work. Dr. Barnes ordered an MRI of the left knee. At the same time, he released her to return to work without restrictions.
13. Following the left knee MRI, plaintiff returned to see Dr. Barnes on July 18, 2007. Dr. Barnes reviewed the MRI films himself. Per his records and testimony, the MRI showed a "type II signal" in the medial meniscus, indicating abnormality but not necessarily a tear, and degenerative changes in the trochlear groove. Per his testimony, these are not conditions which would warrant surgery. Dr. Barnes injected plaintiff's left knee, prescribed a sleeve, Ibuprofen, and Vicodin for pain, and a home exercise program.
14. When Dr. Barnes saw plaintiff in follow-up on August 15, 2007, he found she had done well with the injection, and her left knee showed a near full range of motion. Dr. Barnes again noted plaintiff was released to work without restrictions and was to follow-up with him as needed, taking Ibuprofen and Tylenol as needed for pain.
15. On or about November 17, 2007, defendants filed a Form 24 stating on line 2 "Employee-Plaintiff injured her knees when she fell" an acknowledgement of injury to both knees. Defendants further admitted that the claim had been accepted as compensable. In their accompanying memorandum, defendants acknowledged that plaintiff had been treated by Dr. James Snead, and later Dr. Christopher Barnes of Fayetteville Orthopaedics and Sports Medicine, for "complaints of bilateral knee pain, more significant on the right." *Page 7 
16. In response to defendants' Form 24, plaintiff filed an Affidavit stating that she had returned to work on November 15, 2007, for a different employer at a higher wage, and that she did not object to termination of her TTD benefits as of November 15, 2007.
17. On January 10, 2008, plaintiff saw Dr. Douglas Martini, an orthopedic surgeon with Cary Orthopaedics, for a second opinion on her right knee. Plaintiff reported that she fell at work, causing impact to her right and left knees. Dr. Martini recommended a repeat MRI of the right knee because he suspected a popliteal cyst/meniscal cyst.
18. Dr. Barnes agreed that the MRI recommended by Dr. Martini was appropriate and plaintiff underwent the right knee MRI on June 24, 2008. Per Dr. Martini, this MRI showed moderate medial compartment arthrosis with no new meniscal tear. Dr. Martini assessed plaintiff with medial compartment arthritis status post ACL reconstruction. Dr. Martini assigned an eighteen percent (18%) permanent impairment to plaintiff's right knee.
19. Plaintiff returned to see Dr. Barnes on January 19, 2009, due to her continued bilateral knee pain. Dr. Barnes diagnosed degenerative changes in both knees and gave bilateral knee steroid injections. He recommended that plaintiff work on losing weight and continue her current work duties. On January 23, 2009, Dr. Barnes assigned plaintiff a twenty percent (20%) permanent impairment to her right knee.
20. On April 3, 2009, plaintiff returned to see Dr. Barnes, with complaints regarding her left knee, and reported that her knee "gave out" as she was walking up some stairs. Dr. Barnes performed a repeat injection on plaintiff's left knee, and prescribed pain medicine. It appears that no further medical treatment for plaintiff's left knee was authorized by defendants following this visit. *Page 8 
21. On or about January 30, 2009, plaintiff completed a Form 18M, which was signed by Dr. Barnes, in which she sought continued medical treatment for both knees. Dr. Barnes acknowledged that there was a substantial risk that plaintiff would need additional medical care including "injections, medications, joint replacement surgeries, and/or arthroscopies, PT." In signing the form, Dr. Barnes did not distinguish such care as only for the right knee.
22. In response to the Form 18M, defendants filed a Form 33 Request for Hearing, in which they again referenced that plaintiff had sustained "bilateral knees" injuries.
23. Based upon the preponderance of the evidence, including the initial medical records, physician testimony, and plaintiff's testimony, which is found to be credible, plaintiff sustained injuries to both knees when she fell on October 19, 2006. She struck both knees and suffered contusions on her left knee as well as her right knee. The more painful and serious injury was to her right knee, and that was the knee on which the physicians focused their treatment, including the surgery performed by Dr. Snead. The left knee injuries have not yet warranted surgical intervention, but have required pain management including injections and pain medicine.
24. The testimony of Dr. Barnes indicates, and it is found, that the contusions to plaintiff's left knee, and the shift in weight, overcompensation, as plaintiff was recovering from her right knee injury and surgery, aggravated plaintiff's underlying left knee condition. Her left knee condition became more symptomatic and chronic.
25. Per the testimony of Dr. Deborah Morris, plaintiff's left knee complaints in the fall of 2006 were caused by the contusions and injuries she sustained in her fall on October 19, 2006. Dr. Morris also agreed, and it is found, that altering her gait due to her right knee injury, could aggravate plaintiff's left knee condition. *Page 9 
26. Plaintiff is in need of additional medical treatment, as set forth on the Form 18M, for her bilateral knee injuries, including possible "injections, medications, joint replacement surgeries, and/or arthroscopies, PT." Dr. Barnes is an appropriate physician to direct and administer any further medical treatment that may be needed.
27. Defendants authorized and paid for treatment for both knee injuries and did not attempt to deny the left knee injuries until at least 17 months later when they filed the Form 60, listing only the right knee. Thereafter, defendants continued to refer to the injuries as bilateral knee injuries.
28. Defendants have not engaged in stubborn or unfounded litigiousness in their defense of this claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained compensable injuries to both her right knee and her left knee when she fell and sustained her compensable accident on October 19, 2006. N.C. Gen. Stat. § 97-2(6);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980).
2. Per the medical evidence, plaintiff is in need of ongoing medical treatment for her bilateral knee injuries, as set forth in testimony and the Form 18M and defendants are responsible for the same. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Although plaintiff is in need of additional pain management and other medical treatment for her bilateral knee injuries, as assessed by Dr. Barnes and Dr. Martini, plaintiff is otherwise at maximum medical improvement as to her right knee condition. Plaintiff is entitled to *Page 10 
payment for her twenty percent (20%) permanent impairment to her right knee, as assessed by her treating physician Dr. Barnes. N.C. Gen. Stat. § 97-31(15).
4. There is no evidence regarding any permanent impairment to plaintiff's left knee and that issue is not addressed at this time. N.C. Gen. Stat. § 97-31(15).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff due to her bilateral knee injuries of October 19, 2006, including but not limited to continued treatment with Dr. Barnes, so long as such treatment is reasonably necessary.
2. Defendants shall pay plaintiff compensation for the twenty percent (20%) permanent impairment rating to her right knee as assessed by Dr. Barnes. Such benefits have accrued and shall be paid in a lump sum, subject to the attorney's fee approved herein, at the rate of $240.00 per week for 40 weeks or $9,600.00.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 2 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the 23rd day of September, 2011. *Page 11 
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1